IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CAROL G. MONTAÑEZ, <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CIVIL NO: 14-1701 (MEL) |

**OPINION AND ORDER**

I.  **PROCEDURAL AND FACTUAL BACKGROUND**

Carol Montañez ("plaintiff" or "claimant") was born in 1963. Tr. 50. She has an eighth grade education (Tr. 51) and past work as a machine off-bearer and shipping and receiving clerk. Tr. 71. She initially filed an application for Social Security Disability benefits on August 13, 2008, alleging disability on the basis of bulging discs, arthritis of the spine, sleep apnea and emphysema. Tr. 407. The alleged onset date of her disability is February 1, 2006. Tr. 323-332. Her last date insured under the Social Security Act was March 31, 2012. Exhibit 8D, pg. 28. Plaintiff's application was initially denied on January 23, 2009. Tr. 194-197. She appealed her decision and was subsequently denied. In a decision dated December 7, 2010, the Appeals Council sent the case to Administrative Law Judge Elizabeth A. Motta ("the ALJ") for remand. Tr. 26. Plaintiff filed a subsequent application for disability and disability insurance benefits on

June 17, 2011. Tr. 341. In her new application, she alleged disability on the basis of bulging discs, lumbar spine impairment, severe back pain, emphysema, COPD, bipolar disorder and depression. Tr. 361, 252. This application was included in ALJ Motta's decision. Tr. 26. Plaintiff appeared before ALJ Motta for remand on April 1, 2013. Tr. 46-79. The ALJ rendered a decision on May 6, 2013, finding that plaintiff was not disabled. Tr. 23-38. The Appeals Council denied request for review, therefore, the ALJ's opinion became the final decision of the Commissioner of Social Security (the "Commissioner" or "defendant"). Plaintiff filed a complaint seeking review of defendant's findings with regard to lumbar spine impairment and severe back pain. Both parties have filed supporting memoranda of law.

II.   **LEGAL STANDARD**

   **A. Standard of Review**

Once the Commissioner has rendered his final determination on an application for disability benefits, a district court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence.  Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error."  López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence is "such

2

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's fact findings are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Irlanda Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B. Disability Under the Social Security Act

To establish entitlement to disability benefits, the claimant bears the burden of proving that he or she is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that the claimant is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. At step one, it is determined whether the claimant is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether the claimant has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If she does, then the ALJ determines at step three whether the claimant's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. part 404, subpart P, appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then the claimant is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether the claimant's impairment or impairments prevent her from doing the type of work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ concludes that the claimant's impairment or impairments do prevent her from performing her past relevant work, the analysis then proceeds to step five. At this final step, the ALJ evaluates whether the claimant's residual functional capacity ("RFC"),[1] combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that the claimant can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

---

[1] An individual's residual functional capacity is the most that he or she can do in a work setting despite the limitations imposed by her mental and physical impairments. 20 C.F.R. § 404.1545(a)(1).

III.    **ANALYSIS**

    **A.  Treating Physician**

Plaintiff first argues the ALJ erred in giving no probative weight to the opinions from treating physician Dr. Gretchen M. Lorenz, who had been treating plaintiff for chronic low back pain since 2002.[2] Tr. 1590. On July 14, 2011, Dr. Lorenz reported the plaintiff had the following limitations: (1) she could not stand more than one hour or sit more than one hour on a sustained basis in a normal competitive five day a week work environment, (2) she would need to get up and move around every 15-30 minutes, and would need 5-10 minutes before she could sit again, (3) she could occasionally lift and carry no more than five pounds, and (4) her symptoms are likely to produce good and bad days, and on average, is likely to be absent from work more than three times per month as a result of her impairments or treatment. Tr. 1533-1534.

According to Dr. Lorenz, these limitations were based on a diagnosis of chronic back pain secondary to degenerative disc disease and nerve root compression. She stated her diagnosis was supported by an "MRI which shows "L5-S1 disc protrusion and nerve root compression." Tr. 1532. Finding Dr. Lorenz's opinion entitled to neither controlling nor deferential weight, the ALJ found the Claimant could do the following:

> lifting up to 20 pounds occasionally and 10 pounds frequently; standing and walking limited to combined total of four hours in an eight hour workday, no climbing ropes, ladders or scaffolds; no exposure to hazards, such as moving or dangerous machinery or working at unprotected heights, only occasional postural activities, such as climbing stairs/ramps, balancing, stooping, kneeling, crouching and crawling; an indoor, temperature controlled, clean air environment (no concentrated exposure to gases, odors, dust, fumes, or poorly-ventilated areas); simple, repetitive tasks; low stress work with no strict production quotas or fast pace and few changes in the work setting; and only occasional contact with supervisors, co-workers, and the public.

Tr. 31.

---

[2] Treatment notes in the record show Dr. Lorenz treated plaintiff more than 30 times from the alleged onset date in 2006 through the date last insured in 2012. *E.g.*, Tr. 728, 1055, 1602.

Based on this RFC, the ALJ found there were jobs the plaintiff could perform in the national economy and therefore was not disabled.

The disability determination process generally accords "more weight to opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."[3]  20 C.F.R. § 404.1527(c)(2). As such, "a treating source's opinion on the question of the severity of an impairment will be given controlling weight so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Polanco-Quiñones v. Astrue, 477 F. App'x 745, 746 (1st Cir. 2012) (quoting 20 C.F.R. § 404.1527(c)(2)). To this end, "an ALJ must give 'good reasons' for the weight accorded to a treating source's opinion." Id. (quoting 20 C.F.R. § 404.1527(c)(2)) (emphasis in original).

When the treating opinion is not given controlling weight, the ALJ must consider all of the following factors in deciding the remaining weight to be given to the opinion: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of findings, (4) consistency of the medical opinion with the record as a whole, (5) the doctor's specialization, and (5) any other factors brought to their attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527 (c)(2)(i)-(c)(6). To disregard a treating physician's opinion completely, the ALJ must find (1) it was not supported by medically acceptable clinical and laboratory diagnostic techniques, or it is

---

[3] Similarly, the Commissioner should "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." 20 C.F.R. § 404.1527(c)(1).

6

inconsistent with other substantial evidence in the record, and (2) after considering the five factors above, the opinion is not entitled to deferential weight. 20 C.F.R. § 404.1527. In the instant case, the ALJ declined to give controlling or deferential weight to Dr. Lorenz's opinions, stating, "the limitations described by Dr. Lorenz seem excessive in view of the claimant's treatment history, objective medical testing, and Dr. Lorenz's treatment notes." Tr. 36.

### 1. The Objective Medical Testing

The ALJ began her analysis noting that "First, Dr. Lorenz states that the claimant has nerve root compression; however, the MRIs did not show any evidence of nerve root compromise (Exhibit 2F, page 2 and Exhibit 35, page 51)." Tr. 35. The ALJ also found the following facts significant: in March 2006, an evaluating surgeon, Dr. Affrick, did not find any neural involvement or disc herniation that would warrant surgery; a June 2006 myelogram showed no neural compression; and a February 2006 EMG of the right lower limb and lumbar paraspinals was negative for neurological problems. Id.

If indeed the MRIs showed no evidence of nerve root compression, the ALJ's decision to disregard Dr. Lorenz's treating opinion may have been entitled to deference. This alleged contradiction would show Dr. Lorenz's opinion was not supported by diagnostic techniques and that her opinions are inconsistent with other substantial evidence in the record. Furthermore, this contradiction would suggest giving Dr. Lorenz's opinion less weight under the supportability and consistency factors under 20 C.F.R. § 404.1527 (c) (3-4).

An MRI report dated December 29, 2010, however, does show evidence of nerve root compression. In the report, Dr. James White states, "at the L5-S1 disc space there is [a] rightward disc protrusion *that compresses the anterior nerve root* and minimally compromises the medial aspect of the right neural foramen. This finding is new compared to the previous

7

study of January 2006." Tr. 1504 (emphasis added). This MRI postdates the other diagnostics, and therefore does not contradict their findings. Patients may develop more severe symptoms over time. This December 29, 2010 report is within the plaintiff's last date of insurance (March 31, 2012), and therefore should have been considered. Exhibit 8D, pg. 28. The ALJ makes no mention of this report.

### 2. Plaintiff's Treatment History and Dr. Lorenz's Treatment Notes

After addressing the objective testing, the ALJ pointed out that Dr. Lorenz's treatment notes and the plaintiff's treatment history are also inconsistent with a finding of disability. Tr. 35. The ALJ noted that

> According to Dr. Lorenz's treatment notes, the claimant's pain level was described as 'well controlled' although a 5 on a scale of 1-10 (most severe pain). In general, the treatment notes of her physical examinations were normal and she had a normal gait and was able to stand without difficulty. She had a normal gait per Dr. Patel's notes. She had good exercise tolerance on cardiac treadmill testing in late 2007. In addition, Dr. Lorenz consistently encouraged the claimant to exercise and engage in aerobic exercise 4-5 times per week. . . . Finally, the State agency reviewers opinions do not support that the claimant is disabled and those opinions are consistent with the overall body of evidence.

Tr. 35-36 (internal citations omitted).

Plaintiff argues in response that the treatment reports referred to by the ALJ state that plaintiff's pain was constant and ranged between 4 and 10 on a ten point scale. Indeed, the treatment reports do show greater variation than implied by the ALJ. In the autumn of 2007, Dr. Lorenz noted the plaintiff had back pain with radiation. Tr. 720. On a scale of 1-10, Dr. Lorenz noted plaintiff's pain was "Now: 8 Worst: 10 Least: 7 Average: 8." Tr. 718. Early 2008, Dr. Lorenz noted plaintiff's pain was a "7." Tr. 737.  In the spring of 2008, Dr. Lorenz noted plaintiff's pain was "Now: 6 Worst: 9 Least: 2 Average: 4." Tr. 1027. To the ALJ's credit, however, the majority of treatment reports after 2009 describe the plaintiff's pain as a "5." The

general trajectory of the treatment reports suggest that plaintiff's pain gradually improved from 2007-2009 and then remained static at "5" through the date last insured in 2012.

The ALJ is entitled to deference with regard to her conclusions regarding the treatment reports and treatment history. It is not clear, however, to what extent the ALJ's conclusion on Dr. Lorenz would remain the same taking the December 29, 2010 MRI report into account. Accordingly, this case is remanded for the ALJ to consider whether Dr. Lorenz's opinion is entitled to either controlling weight or deferential weight under the appropriate standards in light of the December 29, 2010 MRI report.

### B. Plaintiff's Credibility

Plaintiff next argues the ALJ's credibility determination was insufficient. The basis for the credibility determination is a two-step process. A plaintiff must first demonstrate the existence of a medically determinable impairment that could reasonably be expected to produce the plaintiff's symptoms. Soc. Sec. Ruling 16-3p; Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016). Once an underlying physical or mental impairment(s) that could reasonably be expected to produce the plaintiff's pain or other symptoms has been shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the plaintiff's symptoms to determine the extent to which they limit the plaintiff's functioning. Id. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on whether the plaintiff's statements are consistent with the objective medical evidence and other evidence in the record. Id.

In this determination, the ALJ considers the objective medical evidence as well as the following factors: (1) plaintiff's daily activities, (2) the location, duration, frequency, and

intensity of pain or other symptoms, (3) precipitating and aggravating factors, (4) the plaintiff's medications and any side effects, (5) any treatment other than medication a plaintiff receives for relief of pain and other symptoms, (6) any measures other than treatment the plaintiff uses to relieve pain or other symptoms, and (7) any other factors concerning the plaintiff's limitations due to pain or other symptoms. Id.

Here, the ALJ found the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. Tr.33.  On this point, the ALJ made the following specific findings: "The objective findings with regard to the back, including no need for surgical intervention and no evidence of neural involvement, do not suggest a serious lumbar spine disorder that would cause the degree of limitation alleged by the claimant. . . . Evidence pertaining to the claimant's usual activities and her ability to function in the performance of routine daily tasks also supports a finding that through the date last insured, she remained quite capable of performing work involving the reduced light range." Id. Elsewhere in the opinion, the ALJ noted plaintiff was able to care for her personal needs, prepare meals five days per week, do laundry, shop once a week with her husband, travel to Puerto Rico once per year, and she was able to take care of her granddaughter twice per week in 2009. Tr. 30. The ALJ also noted consideration of the plaintiff's medications and lack of any side effects that would preclude work. Finally, the ALJ noted "The claimant was diagnosed with chronic pain syndrome, but she appeared to be avoiding long term professional mental health treatment that could help her deal with her pain so that she could stop taking long term narcotics."

The credibility determination by the ALJ, who observed the claimant, evaluated [her] demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to

10

deference, especially when supported by specific findings. Frustaglia v. Sec'y of Health and Human Servs., 890 F.2d 520, 523 (1st Cir. 1989) ("'particular attention' is afforded an ALJ's"evaluations of complaints of pain in light of their 'subjective nature"). The ALJ, however, again relied on the mistaken assertion there was no evidence of neural involvement. The Commissioner's fact findings are not conclusive "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

In this case, the ALJ improperly discounted, at least in part, the treating physician's opinion on the grounds that her claim of nerve root compression was not supported by the objective medical evidence. The December 29, 2010 MRI report, however, did show evidence of nerve root compression. Based on the foregoing analysis, the court concludes that the decision of the Commissioner was not based on substantial evidence. Therefore, the Commissioner's decision is hereby VACATED and the case REMANDED for the ALJ to evaluate and explain whether the December 29, 2010 MRI report changes or not her ultimate conclusion and why.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of September, 2016.

                                                                                                 s/Marcos E. López
                                                                                                  U.S. Magistrate Judge